IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| GLENDA S. JOYCE, § <br> Plaintiff, § <br> § <br> v. § <br> § <br> NANCY A. BERRYHILL[1], § <br> Acting Commissioner of Social Security, § <br> § <br> Defendant. § | Civil Action No. 4:16-CV-00689-Y-BL <br><br><br> Referred to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Glenda Joyce seeks judicial review of the decision of the Commissioner of Social Security, who denied her application for disability insurance benefits under Title II of the Social Security Act. The United States District Judge reassigned the case to this Court pursuant to 28 U.S.C. § 636(c). The parties have not consented to proceed before a United States Magistrate Judge. After considering all the pleadings, briefs, and administrative record, this Court recommends the decision of the Commissioner be vacated and the case remanded for further analysis and factual development.

## I. STATEMENT OF THE CASE

Joyce filed an application for DIB on March 18, 2013, alleging impairments that were disabling as of May 31, 2012. That application was denied initially and again on reconsideration. Joyce requested a hearing, which was held before an Administrative Law Judge (ALJ) on November 3, 2014. The ALJ issued a decision on February 10, 2015, finding Joyce not disabled.

Specifically, the ALJ found during step one that Joyce had not engaged in substantial gainful activity since May 31, 2012. (Doc. 11-3, 16). At step two, the ALJ found that Joyce had

---

[1] On January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), the Court automatically substitutes her as the named defendant.

1

the severe impairments of fibromyalgia, chronic headaches, short-term memory loss, and history of broken ribs after a fall. (Doc. 11-3, 16). In the third step, the ALJ found that those severe impairments did not meet and were not the equivalent of any of the listed impairments. (Doc. 11-3, 17). The step three analysis continued, with the ALJ determining Joyce retained the residual functional capacity (RFC) to perform medium work, except that her exposure to heights and machinery should be avoided, she should have the option to stand or sit every thirty minutes, and she could perform detailed—but not complex—tasks. (Doc. 11-3, 18). Those restrictions led the ALJ to determine that Joyce could not return to her previous employment in the fourth step, but was able to perform acceptably at jobs existing in the national economy at the fifth step. (Doc. 11-3, 22).

Joyce then applied to the Appeals Council, which denied review on June 1, 2016. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[t]he Commissioner's final decision includes the Appeals Council's denial of [a claimant's] request for review").

## II. FACTUAL BACKGROUND

According to her pleadings, testimony at the administrative hearing, and the administrative record, Joyce was 62 and living with her husband and mother at the time of the administrative hearing. She had previously worked as a legal assistant. She believes her physical and mental impairments render her disabled under the Act.

## III. STANDARD OF REVIEW

A person is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. §§ 1382(c)(a)(3)(A), 423 (d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b).

To evaluate a disability claim, the Commissioner follows a "five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing [she] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and

the Court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Newton*, 209 F.3d at 452. The Court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the Court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton*, 209 F.3d at 452.

## IV. DISCUSSION

Joyce alleges the ALJ improperly rejected the opinion of every psychological medical expert and inappropriately failed to properly consider her headaches.

### A. Psychological Experts

Joyce argues that "all the experts agree" she "is limited to the performance of simple routine tasks" and this is incompatible with the RFC determined by the ALJ as well as the hypothetical question posed to the vocational expert. (Doc. 15, 9). This argument raises three issues with distinct standards of proof: whether the ALJ improperly rejected the evidence offered by acceptable sources, whether the RFC determination is supported by substantial evidence, and whether the Commissioner carried her burden at the fifth step of showing sufficient jobs Joyce was capable of performing.

The opinion of an acceptable treating medical source is given great weight. *Newton*, 209 F.3d at 453. "Acceptable medical source refers to one of the sources described in [20 C.F.R.] § 404.1513(a) who provides evidence about [the claimant's] impairments. It includes treating sources, nontreating sources, and nonexamining sources." 20 C.F.R. § 404.1502. Joyce presents evidence from consulting psychologists which she believes establish mental impairments the ALJ

improperly rejected. The first such psychologist is Dr. Richard Kownacki, who directly examined Joyce on two occasions. (Doc. 15, 5). The ALJ addressed Dr. Kownacki's evidence as follows:

> Dr. Kownacki assessed the claimant with a GAF score of 55, which indicates moderate impairment in social, educational, and occupational functioning. Little weight was granted to GAF scores because they are a mere snapshot in time and not a longitudinal assessment. Dr. Kownacki indicated that the claimant seemed to have trouble with her visual memory. The claimant reported a traumatic accident to the right side of her head when she fell. Dr. Kownacki indicated that that would affect the claimant['s] visual memory. Overall, little weight was granted to Dr. Kownacki's assessment of the claimant. He appeared to be delving outside his scope of care. Moreover, he was using the claimant's subjective complaints to formulate a prognosis. Dr. Kownacki did indicate that the claimant's short-term memory allegations were essentially a mild cognitive impairment.

(Doc. 11-3, 21) (internal record citations omitted). Although Joyce claims 20 C.F.R. § 404.1527(c) requires that "if an ALJ's RFC conflicts with opinions of medical sources, [they] must explain why the opinion was not adopted[,]" the regulation does not impose any such requirement. (Doc. 15, 12). While the Commissioner is required to "give good reasons in [the] notice of determination or decision for the weight [she] give[s] [a] treating source's medical opinion[,]" Dr. Kownacki is not a treating source. 20 C.F.R. § 404.1527(c)(2). Instead, subsection (c) of § 404.1527 sets out six factors for assessing all medical opinions: examining relationship, treatment relationship, supportability, consistency, specialization, and other factors such as the source's familiarity with disability proceedings.

Contrary to Joyce's implication, an imposition on the Administration to consider those six factors when evaluating medical opinions does not equate to a requirement that an ALJ specifically address each one in the text of a decision in every case. (Doc. 15, 13). Joyce's burden is to show the ALJ's determination is unreasonable, and a mere re-framing of the facts is insufficient to show that lack of substantial evidence. To upset the ALJ's decision about Dr. Kownacki's evidence, Joyce must prove the ALJ did not consider those factors, but here only repeatedly asserts he must

not have, as he came to a different conclusion than her desired outcome. Absent a definitive showing the ALJ ignored applicable regulations, Joyce's argument constitutes an impermissible request to reweigh the evidence and second-guess the Commissioner's decision. This is insufficient, and so Joyce fails to show that the ALJ's treatment of Dr. Kownacki's opinion is unsupported by substantial evidence or the result of an incorrect legal standard.

Joyce's arguments about the other non-examining psychological consultants are similarly specious. The ALJ found that "Dr. Germain and Dr. Geary opined that the claimant was maximally able to understand, remember, and carry out only simple instructions, make simple decisions, attend and concentrate for adequately extended periods, interact adequately with co-workers and supervisors, and respond appropriately to changes in routine work setting." (Doc. 11-3, 20). The ALJ then agreed with that opinion, except that he cited evidence from Joyce's testimony about her daily activities in finding she was capable of more than only simple job tasks. (Doc. 11-3, 21). Although Joyce characterizes this as impermissible weighting of lay evidence over medical opinion, "[i]t is permissible for the Court to consider the claimant's daily activities when deciding [her] disability status." (Doc. 15, 5); *Leggett v. Chater*, 67 F.3d 558, 565 n.12 (5th Cir. 1995). This is, again, an impermissible request for the court to disrupt the Commissioner's decision based on a disadvantageous resolution of a conflict in the evidence, rather than a showing the decision is unsupported by substantial evidence.

Since Joyce provides no basis for finding the ALJ's treatment of the evidence supplied by these psychologists is the result of legal error or unsupported by substantial evidence, there is likewise no error in the RFC. A claimant's RFC is the summary of their capability for work considering all impairments as evaluated by the ALJ according to the legal standards. Since Joyce has shown neither that any medical opinions were incorrectly evaluated nor that the RFC set out

by the ALJ did not match the impairments assessed, she has failed to show the RFC is unsupported by substantial evidence or the result of legal error. As a result, even with the shifted burden of proof at step five, there is also not reason to find the ALJ's decision as a result of the testimony of the VE is reversible legal error.

## B. Headaches

Joyce also argues the ALJ erred by failing to consider any specific listing or include limitations relating to the headaches he classified as a severe impairment. She specifically argues it is reversible error for the ALJ to fail to explicitly consider Listing 11.03 and detail why he believes it does not apply to her. (Doc. 15, 21). The Social Security Administration uses Listing 11.03 when evaluating chronic migraine headaches.[2] *See* Program Operations Manual System (POMS) DI 35405.015. When the ALJ rendered his decision in February 2015, Listing 11.03 read:

> 11.03 Epilepsy—nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. § 11.03 Pt. 404, Subpt. P, App. 1 (effective January 2, 2015 to May 27, 2015). The Q&A recognizes "significant changes in the diagnosis and treatment of migraine headaches" and that not all aspects of Listing 11.03 as set out for epilepsy apply in the context of evaluating migraine headaches, and explains that a "diagnosis of migraine headaches requires a detailed description from a physician of a typical headache event ...." *SSA National Q&A* 09-036 at 2-4. The Q&A requires such "clinically accepted indicators of the diagnosis" such as a headache lasting "4 to 72

---

[2] Joyce cites to *SSA National Q&A* 09-036 which states that the listing for epilepsy is most appropriate for determining equivalence to migraine headaches. She appears to argue at some points that her migraine headaches could meet the standards of 11.03, but this is incorrect: they could only be medically equivalent in severity. Joyce apparently intended to include the Q&A as an appendix and failed to do so; however, the court has located relevant authority.

7

hours if untreated or unsuccessfully treated"; "Unilateral, pulsating (throbbing) quality" and moderate or severe pain, worsened by at least one of the following: routine physical activity or causing avoidance of such activity; and experiencing nausea, photophobia, or phonophobia during the headache. *Id.*

Through the Q&A, the SSA "clarified which 'essential components of listing 11.03' may be most relevant when considering whether a claimant's migraine headaches meet or medically equal a listing." *Dunlap v. Colvin*, 2016 WL 5405208, at *9 (D. Colo. Sept. 28, 2016) Based on the Q&A, if the listing referred to migraine headaches instead of epilepsy, it would read as follows:

> Migraine headaches, documented by detailed description of a typical headache event pattern, including all associated phenomena, e.g., premonitory symptoms, aura, duration, intensity, accompanying symptoms, and treatment; occurring more frequently than once weekly, counting characteristic headache events. With (1) alteration of awareness, which means a condition of being inattentive, or not cognizant of one's surroundings and external phenomena as well as one's personal state or (2) significant interference with activity during the day that may result from, e.g., a need for a darkened, quiet room; lying down without moving; or a sleep disturbance that impacts on daytime activities.

*See Dunlap*, 2016 WL 5405208 at *9; *Plummer v. Colvin*, 2014 WL 7150682, at *10 (D. Ariz. Dec. 16, 2014); *Miller v. Astrue*, 2011 WL 671752, at *12 (D. Ariz. Feb. 17, 2011).

The ALJ did not mention Listing 11.03, and the failure to consider a relevant listing is error. *Dawson v. Colvin*, 2016 WL 844836, at *7 (W.D. Tex. Mar. 1, 2016) (addressing identical issue related to Listing 11.03). Because the ALJ in this case fails to explain how he concludes that Joyce's migraine-headache impairment is not medically equivalent to § 11.03, he fails to provide this reviewing court sufficient information to determine whether his decision is based on substantial evidence. *See Audler*, 501 F.3d at 448. However, an error does not require remand unless the error is prejudicial. *See id.*

At the administrative hearing, Joyce testified that she uses a nerve stimulation machine roughly five times a week for headache pain, will take a mixture of medication five or six times a month for especially severe headaches, and will occasionally take a second dose of that medication on the same day. (Doc. 11-3, 73-74). She claimed that she was awake but "kind of zonked out" after one dose of that mixture of medication but would likely go to sleep after taking that medication a second time. (Doc. 11-3, 75). She also claimed that she would fall asleep on the couch watching television during the day "a couple times a week" and would go to bed and rest because of headaches for roughly three hours about five or six times a month.

Although the ALJ assessed Joyce with the severe impairment of "chronic headaches[,]" the failure to consider migraines in the context of Listing 11.03 is reversible error. (Doc. 11-3, 16). Although the ALJ noted that the "treatment for her headaches was very conservative in nature and not consistent with her allegations[,]" and that the reports about her daily life and travel led him to consider Joyce as only partially credible, a conclusion that she qualifies as disabled under Listing 11.03 may be reasonable after further review of the record evidence. Without more detailed factual analysis, it is unclear that Joyce's symptoms from migraine headaches would affect her ability to work—as reflected in the RFC—but would not qualify under the Q&A and Listing 11.03. The error, therefore, is not harmless, and Joyce's case should be remanded to the SSA for further administrative proceedings and factual determination.

## V. CONCLUSION

Considering the foregoing, it is **RECOMMENDED** that the decision of the Commissioner be **VACATED** and Plaintiff's complaint be **REMANDED** to the Social Security Administration.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated August 31, 2017.

E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE